# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

JANE DOE 2,

     Plaintiff,

     v.

BUTLER UNIVERSITY;              Case No.
MICHAEL HOWELL, individually and as
an agent of Butler University; and       Hon.
RALPH REIFF, individually and as an
agent of Butler University;

     Defendants.

_____

## COMPLAINT AND JURY DEMAND

Plaintiff Jane Doe 2,[1] by and through her attorneys, The Fierberg National Law Group,

PLLC and Cohen & Malad, LLP, brings this action against Defendants Butler University

("Butler"), Michael Howell, and Ralph Reiff for negligence, gross negligence, battery, assault,

and intentional infliction of emotional distress, and states and alleges as follows:

### INTRODUCTION

1.      Butler athletic trainer, Defendant Michael Howell, groomed, illicitly

photographed, and sexually assaulted Jane Doe 2 and numerous other members of the Butler

---

[1] This case is one of three contemporaneously filed in this Court on behalf of female athletes injured at Butler and by these named Defendants under substantially similar circumstances. Pursuant to S.D. Ind. L.R. 10-1, Plaintiff is contemporaneously filing under seal a Notice of Intention to Seek Leave to Proceed under Pseudonym and a Joint Motion to Proceed Under Pseudonym ("Joint Motion"). The Joint Motion is brought on behalf of Plaintiff (referred to therein as "Jane Doe 2") and two other student-athletes ("Jane Doe 1" and "Jane Doe 3") who are now filing Complaints against Defendants. Plaintiffs are three of six women who formally reported Michael Howell's sex abuse to Butler University, and together they comprise just a few of the many victims of Howell's abuse.

women's soccer team. The assaults and other sexual misconduct – which included Howell rubbing his erect penis against female players and dripping his sweat on the athletes as he groped their outer vaginal areas, breasts, and nipples – trace back many years and were perpetrated in Butler's training room, offices, buses, and in Howell's private hotel rooms as he traveled with the team for away games; locations and times when Howell was presumably under the supervision of Defendant Ralph Reiff, Butler's Senior Associate Athletic Director for Student-Athlete Health, Performance and Well-Being, and, more generally, the co-head coaches for the Butler women's soccer team, Tari St. John and Robert Alman.

2.      Howell's misuse of his position of power and authority over Butler athletes and deviation from standard practices were numerous and obvious. Defendant Reiff did not do anything reasonable required to investigate the circumstances, train the coaches, keep Howell or the athletes under watch, promulgate or request the implementation of safety policies, or otherwise protect multiple women as they were repeatedly abused by Howell in various locations on and off campus over extended periods of time.

3.      Defendant Reiff, Howell's direct supervisor, knew that athletic massages typically last no more than 10 minutes, focus solely on the target area, and should be used sparingly only when no other method is effective. However, Howell routinely gave Ms. Doe and other athletes full body massages that lasted an hour or more, often taking them to locations (such as his private hotel room at away games as opposed to conference rooms available for training) outside the direct sightline of supervising staff. Nevertheless, Defendant Reiff and the coaches never inquired, investigated, raised questions about the safety of the female athletes, or implemented or followed safety protocols. Upon information and belief, Defendant Reiff failed to ensure that athletic staff, coaches St. John and Alman, and student-athletes were provided with protocols or

attended trainings that would identify the safety standards and practices for the treatment by trainers of female athletes.

4.     Howell began sexually assaulting Ms. Doe when she was a freshman during the 2019 fall season and continued to sexually abuse her until her junior year. In just one instance, in the fall of 2021, Ms. Doe went in for treatment on her neck. Howell began massaging her neck, but he quickly moved down to Ms. Doe's hips and groin, massaged her under her shorts, touched her pubic hair, and rubbed her so forcefully that her groin was bruised and painful the next day. Multiple versions of this and other gross misconduct were perpetrated upon Ms. Doe, causing her substantial emotional, physical, and other injuries and damages. Unfortunately, Howell perpetrated similar misconduct on other athletes.

5.     When Ms. Doe and five other young women reported Howell's misconduct, including the fact that he was surreptitiously photographing and videotaping athletes, Butler selected and retained independent legal counsel to investigate the allegations and make findings of fact under the demanding standards of Title IX of the Educational Amendments of 1972. However, Butler alerted Howell to the investigation before contacting law enforcement or seizing his work-issued phone, allowing Howell to destroy and/or transfer likely lurid photographs and videos taken of the athletes.

6.     Following an extensive investigation and fact-finding hearings, a panel of outside attorneys who served as decision makers ("Title IX Panel" or "Panel") confirmed the gravamen of the allegations, concluded that Butler did not have a formal policies and procedures manual for its athletic trainers, lacked necessary safety protocols, and emphasized Howell's stark deviations from standard practices.

7.     The Panel concluded that Howell slowly and steadily isolated and manipulated Ms. Doe, made her vulnerable, and caused her to feel that she was utterly powerless. During this time, Reiff was aware that Howell created a "bubble" around the women's soccer players, and St. John was aware that this culture could have deterred players from coming forward and reporting Howell.

8.     The Panel also determined that Howell had sexually harassed Ms. Doe, and that he had sexually assaulted, sexually harassed, and stalked other young women on the soccer team. The Panel concluded that "[t]he harm to [Ms. Doe] was severe and the effects resulting therefrom are likely to be profound and lasting."

9.     This action is brought by Ms. Doe to recover her injuries and damages, compel Butler to institute safety protocols to protect her current teammates and future athletes, compel Butler to contact former student-athletes to assess whether they were also abused by Howell and need resources and assistance, prevent Howell from maintaining licensure that would give him the ability to abuse others, and to hold Defendants responsible for their acts and omissions that enabled a dangerous predator to gain unfettered access to and abuse her and many other young female athletes.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different States.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because all Defendants reside in this judicial district and/or a substantial part of the events or omissions giving rise to this action occurred in this judicial district.

## PARTIES

12.     Plaintiff Jane Doe 2 is a legal resident of a State that is not Indiana.[2]

13.     Defendant Butler is a private institution of higher education located and operating in Marion County, Indiana.

14.     Defendant Howell was an Assistant Athletic Trainer employed by and acting as an agent of Butler at all material times. Upon information and belief, Howell resides in Marion County, Indiana.

15.     Defendant Reiff was and remains the Senior Associate Athletic Director for Student-Athlete Health, Performance and Well-Being at Butler, employed by and acting as an agent of Butler at all material times. Upon information and belief, Reiff resides in Marion County, Indiana.

## FACTUAL ALLEGATIONS

### *Defendants Butler, Howell, and Reiff*

16.     Butler is an NCAA Division I school, and its athletic teams, including women's soccer, compete in the Big East Conference.

17.     At all material times, Mr. Alman and Ms. St. John were the co-head coaches of the Butler women's soccer team.

18.     Butler employed Defendant Howell as an Assistant Athletic Trainer from the spring of 2012 until October 6, 2021.  Howell was furloughed in the summer of 2020 due to COVID-19 and returned to Butler in the fall of 2020.

---

[2] Because Butler's website includes detailed information regarding the women's soccer team, including each student-athlete's hometown and state, any person could easily identify Ms. Doe's true name if she included her state of residence in this publicly available Complaint. In order to protect Plaintiff's identity and privacy, her state of residence is disclosed under seal in her Notice of Intention to Seek Leave to Proceed under Pseudonym.

19.     During his tenure at Butler, Howell worked with the women's soccer, men's baseball, women's and men's golf, men's tennis, and cheerleading teams.

20.     At all material times, Butler assigned Howell as the sole athletic trainer for the women's soccer and men's tennis teams.

21.     Howell was responsible for physically treating women soccer players to prevent and remedy injuries.

22.     At all material times, Defendant Reiff was Howell's direct supervisor as Howell provided training services to athletes on different teams.

23.     Defendant Reiff's responsibilities included coordinating all healthcare activities for Butler's sports teams and student-athletes, overseeing Butler's sports medicine department and strength and conditioning program, ensuring the implementation of safety protocols and training, and looking after the well-being of staff as well as students under the care of trainers supervised by Reiff.

### Butler Recruited Ms. Doe

24.     At her high school, Ms. Doe was a highly accomplished soccer player and won multiple accolades, championships, and other honors. Ms. Doe was also very successful academically and graduated with multiple distinctions.

25.     Butler recruited Ms. Doe to play women's soccer. She made an unofficial visit in April of her high school sophomore year, committed to Butler in January of her junior year, and made an official visit in the winter of her senior year.

26.     Like her teammates, Ms. Doe had minimal, if any, experience with athletic trainers before attending college.

27.     Ms. Doe began attending Butler in the fall of 2019.

*Howell Intimidated and Manipulated Ms. Doe and Her Teammates*

28.    As known to Defendants, Howell, like all athletic trainers, was in a position of power and authority over members of the Butler women's soccer team.

29.    Howell maintained an environment that female soccer players found intimidating, stressful, and manipulating.

30.    Howell demeaned the soccer coaches and soccer strength coach and claimed that he "decide[d] who plays" women's soccer, as known by Coach Alman.

31.    Coaches St. John and Alman did, in fact, defer to Howell with respect to which soccer team members could play at any given time.

32.    Coach St. John knew that due to the culture of the women's soccer program, and Coach Alman's closeness with Howell, it could be difficult for players to express any concerns they might have about Howell.

33.    Howell told Ms. Doe he was an authority figure and athletic trainers needed to be viewed that way.

34.    Howell was known to withhold treatment from athletes with whom he became upset or as a disciplinary consequence for student-athletes who were late to or missed appointments with him.

35.    Howell bragged about training female students who went on to become professional athletes.

36.    Howell told Ms. Doe that he had files against all the players and would use them if they ever said anything bad about him.

37.    Howell told Ms. Doe and others that if he were to "go down" they would go down with him.

38.     Howell told Ms. Doe he had files of pictures of student-athletes breaking team rules.

39.     Howell told Ms. Doe he knew what the women's soccer team members' Halloween costumes were and knew "all about" the team's Hawaiian-themed party. Howell claimed he accesses photos of the party from social media, which concerned Ms Doe because as far as she knew no team members were connected with Howell on social media.

40.     Howell made comments about a girl who had been stabbed to death in her room.

41.     Howell told Ms. Doe he knew where she lived and referenced a pink pillow that she had sitting in her dorm room window.

42.     Howell described himself as a "beast."

43.     Ms. Doe became frightened of Howell and felt powerless against him.

### The "Breeze" - Howell's Routine Exposure of Female Athletes' Intimate Body Parts

44.     Butler women's soccer team coined the term "the breeze" to describe when Defendant Howell would lift their bras, spandex, and underwear and air would rush over their breasts and vaginal areas. This phrase was widely used among the players.

45.     Neither Defendant Reiff nor Defendant Butler, through other staff, provided Ms. Doe and other female athletes training or education concerning proper protocols and athletic treatment and massage by trainers and personnel that would have direct physical contact with Butler's athletes, despite the well-known vulnerability of athletes to sexual exploitation at the hands of team coaches, doctors, and other treatment providers who – as Defendant Reiff and Butler's coaches knew – stand in a unique position of power and authority over student-athletes.

### *Howell Targeted Ms. Doe During Her Freshman Year at Butler*

46.     Beginning in the fall of 2019, when Ms. Doe was a freshman, and continuing until she and others reported him to Butler in October 2021, Howell leveraged his authority and power as an athletic trainer to isolate, groom, manipulate, control, sexually assault, and otherwise abuse Ms. Doe.

47.     Howell required athletes who were in treatment to continue seeing him until he released them from his care.

48.     Howell never released Ms. Doe from treatment during her time at Butler, regardless of her injury status.

49.     Howell treated Ms. Doe almost every day of her freshman year.

50.     Howell's massages of Ms. Doe initially lasted about 30 minutes and over time increased to lasting over an hour.

51.     Howell consistently asked Ms. Doe to take her shirt off for treatment, often moved Ms. Doe's bra straps although it was unnecessary, and frequently pulled her bra outward so that he had a direct line of sight to her breasts.

52.     When Howell used stim pads[3] to treat Ms. Doe, he initially allowed her to place the pads on herself, but later he began placing the stim pads on her body.

53.     During treatment, Howell did not warn Ms. Doe when he was about to touch a sensitive area or ask if she was okay with the movement or placement of his hands on her body.

54.     Howell's treatments made Ms. Doe feel nervous, uncomfortable, and afraid.

55.     Ms. Doe felt afraid to ask Howell if she could miss treatment for fear of upsetting him.

---

[3] Stim pads are used to convey electrical stimulation to parts of the body during physical therapy.

56.     On September 8, 2019, when the women's soccer team was traveling for an away game, Howell massaged Ms. Doe in her hotel room, with her shirt off, for approximately one hour. Howell also gave Ms. Doe a Benadryl to sleep.

57.     On September 29, 2019, while traveling for an away game, Howell massaged Ms. Doe alone in her hotel room, with the door closed, late at night.

58.     Ms. Doe was shirtless, Howell pulled down her bra strap, and she felt the "breeze" during the hour-long massage. Ms. Doe fell asleep during the massage.

59.     At one point during the fall of 2019, Ms. Doe was on campus, suffered a headache, and sought help from Howell.

60.     Howell told Ms. Doe she had to wait until everyone left before he could treat her.

61.     Once alone, Howell massaged her full body for over an hour.

62.     During the treatment, Howell used one hand to massage Ms. Doe and the other to pull her bra open to expose her chest and cause her to feel the "breeze."

63.     Howell exposed Ms. Doe's breasts at least six times during that massage.

64.     Howell also sent Ms. Doe long, personal, and complimentary text messages.

65.     Howell told Ms. Doe that she was an "amazing person," a "great friend," and "really nice to talk to."

66.     Some text messages were flirtatious in nature.

67.     Howell referred to Ms. Doe as one of the "beasts" he created.

68.     During the same time, Howell instigated fights and drama between Ms. Doe and another member of the women's soccer team, who was also Ms. Doe's roommate.

69.     Howell encourage Ms. Doe and her teammate/roommate to privately confide in him and "vent," and he would then share those confidences with the other young woman, intentionally pitting Ms. Doe against her teammate/roommate.

70.     In addition, Howell approached a small number of athletes, Ms. Doe included, about having secret workout sessions with him.

71.     Howell interviewed the players before accepting them into his workout program.

72.     The workouts typically lasted for about 45 minutes and occurred once or twice a week.

73.     Howell made clear that Ms. Doe and the other participants were not to disclose the sessions to their other teammates or their coaches, who he denigrated.

74.     As an athletic trainer, it was not Howell's job to provide workouts or training programs for athletes, and it was inappropriate for him to do so.

### Howell Continued Abusing Ms. Doe During Her Sophomore Year at Butler

75.     Howell's treatments for Ms. Doe during her sophomore year were similar to those during her freshman year.

76.     During treatments, Howell continued to require that Ms. Doe remove her shirt, and he frequently moved Ms. Doe's sports bra so that he had a direct line of sight to her breasts.

77.     Howell also continued using stim pads to treat Ms. Doe, and he placed them on her body, under her spandex, near her groin.

78.     On two occasions, Howell took Ms. Doe to the windowless physician's office to massage her, even when treatment tables were available in the training room.

79.     The treatments in the physician's office made Ms. Doe uneasy because she was alone with Howell and isolated from others in the treatment room.

80.     While traveling for the Big East Tournament in April 2021, Howell instructed Ms. Doe to come to his hotel room late at night for treatment.

81.     Howell closed the door, dimmed the lights, and had Ms. Doe remove her shirt.

82.     The massage lasted approximately one hour and 45 minutes.

83.     Howell lowered Ms. Doe's bra, partially exposed her breasts so that he could see them, and used only one hand to massage Ms. Doe; she did not know what he was doing with his other hand.

84.     Ms. Doe felt uncomfortable and powerless during the treatment.

85.     During the same tournament, Howell sexually assaulted multiple other women soccer players in his private hotel room and required team members to take ice baths in his hotel bathroom.

86.     On that trip and others, Howell did not treat athletes in the conference room that Butler had reserved.

87.     Instead, Howell treated female soccer players in his private hotel room, which the coaches knew.

### *Howell Abused Ms. Doe During Her Junior Year*

88.     During Ms. Doe's junior year, Howell showed her movie clips depicting a male character looking up a women's skirt and referencing a man touching a woman's breasts.

89.     Following a practice in the fall of 2021, Howell took Ms. Doe and three teammates to a secret session on "getting open," and Howell told them he did not want the coaches or anyone else to know what he was doing.

90.     Howell continued treating Ms. Doe, and he developed a habit of pulling out Ms. Doe's spandex undershorts to expose and look at her vaginal area.

91.     During one massage, Ms. Doe caught Howell staring at her vagina after he moved her underwear and spandex. He was completely unfazed.

92.     On September 10, 2021, Ms. Doe texted a teammate stating, "Mike was definitely looking at my cooter as he rubbed my leg."

93.     On another occasion, Ms. Doe went in for treatment on her neck, and Howell massaged her for approximately one hour and 15 minutes.

94.     Howell began massaging Ms. Doe's neck but quickly moved to her hips and groin, even though she did not go to Howell for groin treatment.

95.     Howell did not drape any of Ms. Doe's intimate body parts during the treatment.

96.     Howell massaged Ms. Doe under her shorts, touched her pubic hair, and rubbed her groin so forcefully that her groin was bruised and hurt the next day.

97.     During the same time frame, Ms. Doe was getting closer to a teammate who Howell was also grooming and sexually assaulting.

98.     Howell disapproved of this friendship and actively tried to interfere with it.

99.     Howell frequently tried to listen in on their conversations and would occasionally drive his golf cart slowly next to them when they were outside walking together.

100.    Howell once had an outburst when he discovered the two laughing together.

101.    Howell tried to pit Ms. Doe against her teammate, much like he had done during Ms. Doe's freshman year with her then roommate/teammate.

102.    Upon information and belief, Howell thought that Ms. Doe was catching on that he was grooming the other woman.

*Howell Secretly Photographed Ms. Doe and Other Female Athletes*

103.    Howell secretly photographed Ms. Doe and other athletes.

104.     Howell photographed them during workouts, lifting weights, and other times when they were not aware.

105.     Howell photographed Ms. Doe when she was sleeping while traveling for an away game.

106.     Howell once showed an athlete a video of a shooting drill on his phone and she saw his entire photo gallery screen was filled with pictures of her.

### *Defendants Reiff and Butler Did Not Adequately Supervise Howell or Ensure the Safety of Ms. Doe and Her Teammates*

107.     Defendant Reiff was aware that Howell created a "bubble" around the women's soccer players, including Ms. Doe, and refused to accept or allow anyone to assist him with the team.

108.     Defendant Reiff also knew that Howell focused on the women's soccer program at the expense of the men's tennis team.

109.     In addition to his knowledge, Coaches St. John and Alman, who accompanied the women's soccer team to every away game and tournament, knew that Howell provided treatment to female athletes in his private hotel room, instead of performing treatment in a conference room. Upon information and belief, Coaches St. John and Alman were not given protocols or otherwise trained by Defendant Reiff or Butler on safety standards for athletic trainers and athletes.

110.     It was widely known amongst Butler athletic staff that a third person should be present if an athletic trainer provides treatment to a student-athlete in a private hotel room.

111.     Coaches St. John and Alman never questioned or confronted Howell about treating women soccer players in his private hotel room instead of the conference room, and they never entered Howell's room to observe his treatments or determine whether Ms. Doe or any

14

other player was safe. Upon information and belief, the coaches' failure to act reasonably is likely a consequence of the lack of adequate training and protocols provided by Defendants Reiff and Butler.

112.   Coaches St. John and Alman knew that Howell had stopped providing written reports detailing women soccer players' injuries and his treatment of the players, despite it being Howell's responsibility to do so. Defendant Reiff knew or should have known that Howell had stopped submitting written reports.

113.   Howell did not record any entries for, among other things, Ms. Doe's concussions, neck injuries, leg strains, or back pain, or his many "massages" and "treatments" of her.

114.   Coaches St. John and Alman knew that Ms. Doe suffered those injuries.

115.   Coaches St. John and Alman knew that Howell withheld treatment from players with whom he was displeased.

116.   Defendant Reiff did not reasonably supervise Howell's treatment of Ms. Doe or other athletes in the treatment room or at other locations, which was critical because Coaches St. John and Alman and other Butler personnel rarely entered the treatment room.

117.   Defendant Reiff did not take measures to ensure that Howell complied with athletic training practices designed to ensure student safety, which would have included treating student-athletes in common areas instead of a private hotel room with a bed; communicating with and appropriately "draping" or covering an athlete during treatment; asking for an athlete's permission to move her garment during treatment; having a trainer of the same sex assist if treatment in a private room is necessary; and properly recording injuries and treatments.

*Ms. Doe and Other Women Soccer Players Reported Howell*

118.    At the time of Howell's massages and treatments, Ms. Doe did not recognize that they were wrong or sexually abusive due to, among other things, her lack of training and education on proper athletic trainer conduct, inexperience with athletic trainers, and youth; the trust and authority Butler and its athletic staff placed in Howell; and the general difficulty many laypeople have in identifying whether an athletic trainer or other treatment provider's actions constitute sexual abuse or sexual misconduct.

119.    It was not until fall of 2021, when Ms. Doe and several other teammates shared their concerns and experiences with Howell, that Ms. Doe recognized Howell's conduct as sexually inappropriate and abusive.

120.    On September 28, 2021, Ms. Doe and three of her teammates reported Howell's sexual misconduct to Coach St. John.

121.    Coach St. John submitted an incident report to Butler based on the information conveyed to her by these players.

122.    On September 29, 2021, Defendant Reiff told Howell that a concern had been raised and that Howell would not be traveling with them to an away game the next day.

123.    Butler's Title IX Coordinator was specifically advised and made aware of the fact that Howell had been surreptitiously photographing and recording young female student-athletes on his Butler-issued phone.

124.    Butler alerted Howell to the complaints and investigation before contacting law enforcement, reviewing Howell's university-issued phone, or demanding possession of the phone so that photographs and videos of the athletes could be reviewed and prevented from being transferred or destroyed.

125.     Butler did not instruct Howell to preserve the contents of the phone for the Title IX investigation.

126.     Although multiple female athletes had reported Howell's serious sexual misconduct to Butler, Defendant Reiff instructed Howell to report to work on campus on October 1, 2021.

127.     Upon information and belief, by October 1, 2021, Howell had been instructed not to interact with the women's soccer players.

128.     On October 6, 2021, Howell was placed on administrative leave, and Butler's Title IX Coordinator filed a "formal" Title IX complaint against Howell.

129.     Between September 28, 2021, when Howell was first reported, and October 6, 2021, when he was placed on administrative leave, he made multiple attempts to interact with players in a manner that frightened them.

130.     This included waiting for players outside the training room, chasing them when they tried to avoid talking to him, and walking aggressively towards a small group of players he saw on campus.

131.     On October 1, 2021, Howell texted Ms. Doe "thank you" while they were in the training room together, which she understood to be sarcastic.

132.     Howell also tried to intimidate her by telling her "good game" as she was leaving the training room.

133.     The following day Howell again came into the treatment room while the women's soccer team was there.

***Independent Counsel Determined that Howell Sexually Harassed Ms. Doe***

134.    Butler retained attorneys from the law firm of Church Church Hittle and Antrim

to investigate the Title IX complaint against Howell.

135.    The investigation lasted approximately five months.

136.    Butler retained additional independent counsel to comprise the decision-making

Title IX Panel that considered the information gathered through the investigation and presided

over a five-day hearing on the complaints against Howell.

137.    During the course of the investigation and/or hearings, Defendant Reiff and other

Butler employees admitted that:

   a.    Butler had no written policies or procedures regarding proper athletic
         trainer conduct, setting boundaries with athletes, or working with athletes
         of the opposite sex;

   b.    An athletic trainer's active treatment for a student-athlete typically lasts
         15-30 minutes, an athletic massage typically lasts only 10 minutes, and
         there is no appropriate reason for an athletic treatment or massage to last
         two to three hours;

   c.    There is no legitimate treatment reason for an athletic trainer to give full-
         body massages, or go under a female athlete's underwear;

   d.    An athletic trainer's treatment of players during away games should take
         place in a conference room or common space, and if that is not possible, a
         third person, preferably of the same sex as the student, should be present
         for treatment;

   e.    Communication from an athletic trainer is imperative during treatment;

   f.    Athletic trainers must appropriately drape a student-athlete during
         treatment in order to shield the student-athlete's private body parts;

   g.    Athletic trainers should not provide individual workouts for players; and

   h.    It is improper for an athletic trainer to deny treatment to a student-athlete
         as a disciplinary consequence.

138.     The Title IX Panel determined, based on a preponderance of evidence, that

Howell had sexually harassed Ms. Doe, in violation of Butler's sexual misconduct policies.

139.     Butler's sexual harassment policy provided, in pertinent part:

> Sexual Harassment is unwelcome conduct on the basis of sex that satisfies
> the conditions outlined in (1), (2), and/or (3), below. "Unwelcome conduct"
> may include any unwelcome sexual advance, request for sexual favors, or
> other unwelcome conduct of a sexual nature, whether verbal, nonverbal,
> graphic, physical, electronic or otherwise.
>
> 3. Hostile Environment: Unwelcome conduct that is sufficiently severe,
> persistent, or pervasive that it unreasonably interferes with, limits, or
> deprives an individual from participating in or benefitting from the
> University's education or employment programs and/or activities.

140.     The Panel found that "[Howell], whose sole responsibility it was to ensure and

maintain boundaries with the student athletes under his supervision, had allowed an

inappropriately close relationship to develop between himself and [Ms. Doe]."

141.     The Panel also determined, "[t]he behavior of [Howell] – the inappropriate

relationship, the sexual touching, and the giving and then withholding of special attention –

served to create an environment in which [Ms. Doe] could be manipulated and made vulnerable."

142.     The Panel found that Howell had also sexually assaulted and harassed other

members of the Butler women's soccer team who complained about him in the fall of 2021,

"evidencing a widespread pattern of inappropriate conduct."

143.     The Panel stated, "[g]iven the sensitive nature of the position of athletic trainer,

the exposure it presents to the student athletes and to Butler University, and the reckless and

inappropriate behaviors of [Howell], there is simply no safe manner in which to allow him to

proceed with his position at the University."

144.     The Panel noted that "[Howell] shows no remorse, and in fact appears angry and

indignant at having any of his actions called into question."

19

145.    The Panel recommended that Butler terminate Howell's employment with no opportunity for rehire and permanently revoke his rights to be on campus or attend any university-sponsored events.

146.    Since 2012, when Howell started as an athletic trainer at Butler, Howell has had access to hundreds, if not thousands, of young female athletes.

147.    Upon information and belief, following the investigation and the Panel Findings, Butler has not reached out to a single former athlete to understand the depth of Howell's misconduct, offer help to those who may be survivors of his abuse, or otherwise take responsibility for the harm caused to athletes by someone under its employ.

### *Defendants Butler and Reiff Ignored the NCAA's Warning Regarding the Foreseeability of Athletic Staff-on-Student Sexual Abuse and the Need for Policies and Training to Prevent It*

148.    Over a decade ago, the NCAA published *Staying In Bounds – an NCAA Model Policy to Prevent Inappropriate Relationships between Student-Athletes and Athletics Department Personnel* ("NCAA *Staying In Bounds* Publication"), a resource "designed to ensure that student-athletes are safe from sexual advances by coaches or other athletic department employees."

149.    The 2012 publication described sexual abuse in the collegiate athletic context as "a slow seduction (or 'grooming') whereby one person gradually prepares another to accept 'special' attention, and then proceed with sexual activity."

150.    The NCAA explained, because of the power differential between athletic staff and student-athletes, any sexual activity between the two inherently constitutes sexual abuse.

151.    The NCAA emphasized the need for "colleges and universities[to] take reasonable steps to prevent unprofessional and potentially harmful relationships between student-athletes

and athletics department staff – especially because . . . **the development of such relationships, and their potentially harmful consequences for athletes, are entirely foreseeable**."

152.    The "reasonable steps" identified by the NCAA included implementing and educating all athletic staff and student-athletes on policies intended to prevent staff-on-athlete sexual abuse.

153.    The Title IX Panel's findings – that Butler had no written policies or procedures regarding proper athletic trainer conduct, setting boundaries with athletes, or working with athletes of the opposite sex – establishes that Defendants Butler and Reiff ignored the NCAA's notice and warnings, to the great detriment of Ms. Doe and other female student-athletes.

### *Independent Counsel Investigated and Determined that Ms. Doe Suffers Severe Injuries*

154.    Butler's own Title IX Panel determined, "[t]he harm to [Ms. Doe] was severe and the effects resulting therefrom are likely to be profound and lasting."

155.    As a direct and proximate result of Defendants' egregious actions and inactions, Ms. Doe has significantly suffered, and will for the foreseeable future continue to suffer severe physical, emotional, and other injuries and damages.

### <u>COUNT I</u>
### Negligence
### (Defendants Butler and Reiff)

156.    Plaintiff Jane Doe 2 incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

157.    Defendants Butler and Reiff owed duties to Ms. Doe to conform their conduct to an appropriate standard of care to prevent, investigate, train other staff to recognize and report, and remediate athletic trainer sexual abuse, sexual harassment, sexual assault, stalking, grooming, and other misconduct against Ms. Doe and other student-athletes.

158.    Defendants voluntarily assumed these duties when they undertook to employ, supervise, utilize, and/or direct female athletes to Howell as an athletic trainer to provide treatment to such athletes, including Ms. Doe, and held him out as a trusted and valuable employee.

159.    Defendants' undertaking and assumption of these duties created a special relationship between them, other Butler staff, and Ms. Doe, and corresponding duties to act in the manner of a reasonably prudent person.

160.    Ms. Doe relied on Defendants' exercise of reasonable care in this undertaking, to protect her from sexual abuse, sexual harassment, sexual assault, stalking, grooming, and other misconduct at the hands of Butler's athletic trainers.

161.    Ms. Doe relied on Defendants' exercise of reasonable care so that she could participate in women's soccer, for which she had been recruited, without being subjected to sexual abuse, sexual harassment, sexual assault, stalking, grooming, and other misconduct by Butler's training staff.

162.    The three-part balancing test utilized by the Indiana Supreme Court in *Pfenning v. Lineman*, 947 N.E.2d 392 (Ind. 2011), also establishes that Defendants owed these duties to Ms. Doe.

163.    Defendants held out and represented Howell as a trusted and valued athletic trainer who student-athletes like Ms. Doe – a vulnerable young woman who, as was true of most of her teammates, had little to no experience with athletic trainers – should trust, rely on, and go to for athletic treatment. Defendant Reiff undertook and was otherwise charged with the supervision of Howell necessary to ensure that such trust and reliance was well-placed and that the athletes were safe.

22

164.    As the sole athletic trainer for the Butler women's soccer team, under Defendant Reiff's direct supervision, Howell was the Butler employee responsible for providing treatment to female athletes, and his responsibilities included treating young women and having access to intimate and private areas of their bodies in vulnerable situations and circumstances.

165.    The risk of Howell sexually abusing, sexually harassing, sexually assaulting, stalking, grooming, and perpetrating other misconduct against female students was reasonably foreseeable given that Howell – as Defendants admittedly knew – possessed great and unique authority and power over the student-athletes entrusted to his care, and he carried out his responsibilities largely without supervision and often in privacy.

166.    The risk of Howell sexually abusing, sexually harassing, sexually assaulting, stalking, grooming, and perpetrating other misconduct against female student-athletes was reasonably foreseeable given the 2012 NCAA *Staying In Bounds* Publication and the high-profile nature of treatment providers' prolific sexual abuse and assault of students and athletes, including but not limited to that of Larry Nassar, Robert Anderson, Richard Strauss, and James Heaps.

167.    Public policy considerations also weigh heavily in favor of imposing these duties on Defendants.

168.    Indiana has codified this social norm and attendant duties and prohibits an athletic trainer from engaging in lewd or immoral conduct or sexual contact with a person the trainer is treating. Ind. Code § 25-1-9-4 (2017).

169.    Student-athletes reasonably expect that universities and their employees will protect them and keep them safe from athletic trainer sexual abuse, sexual harassment, sexual assault, stalking, grooming, and other misconduct.

170.    Reasonable persons would recognize and agree that such duties exist.

171.     Defendants breached their duties and failed to conform their conduct to the

requisite standard of care due to Ms. Doe by, among other things:

      a.     Permitting Howell to provide treatment to female athletes, including Ms. Doe, in his or a student-athlete's private hotel room, without staff or a third person present;

      b.     Failing to supervise Howell during his treatment of Ms. Doe and other female athletes, including in his or a student-athlete's private hotel room, the windowless physician's office, and the training room;

      c.     Failing to train or educate student-athletes, coaches, and staff regarding employee-on-student-athlete sexual assault, sexual harassment, sexual abuse, grooming, stalking, inappropriate touch, boundaries, proper athletic treatment and massage, Title IX, athletic training standard practices and procedures, or reporting complaints or concerns regarding the same;

      d.     Failing to have policies and protocols in place designed to protect student-athletes like Ms. Doe from athletic staff sexual assault, sexual harassment, sexual abuse, grooming, stalking, inappropriate touch, violation of boundaries, and improper athletic treatment and massage;

      e.     Failing to investigate when Howell ceased providing written reports of his treatment of student-athletes including Ms. Doe and/or repeatedly provided treatment to Ms. Doe and/or other members of the women's soccer team in his or a student-athlete's private hotel room;

      f.     Failing to monitor athletes, their injuries, the content or absence of required reports, the specific care they were receiving, and the progression of their treatments;

      g.     Failing to prevent Howell from accessing or approaching Ms. Doe and other female students, after they had reported him to Butler coaches and officials for sexual misconduct; and

      h.     Failing to prevent Howell from destroying and deleting photographs, videos, and other evidence from his university-issued cell phone.

172.     Defendant Butler is vicariously liable for its employees' negligence, under the

doctrine of respondeat superior.

173.     At all relevant times, Defendant Reiff's negligent acts and omissions, as well as

those of the coaches, arose within the scope of their employment as athletic staff hired by

Defendant Butler and as agents of Butler and were in furtherance of Butler's business and interests in the success of the women's soccer team; operating, managing, and supervising the team; and training and caring for Ms. Doe and other student-athletes so that the team would compete for and on behalf of Butler and its athletic program.

174.     As a direct and proximate result of Defendants' negligent actions and inaction, Ms. Doe was sexually assaulted, sexually harassed, groomed, photographed, and abused for years, and she suffered and continues to suffer severe physical and emotional injuries, distress, and other injuries and damages for which she is entitled to be compensated.

**COUNT II**
**Gross Negligence**
**(Defendants Butler and Reiff)**

175.     Plaintiff Jane Doe 2 incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

176.     Defendants Butler and Reiff's acts and omissions, as well as those of the coaches, in breach of their duties to Ms. Doe, set forth above, were in reckless disregard of the high risk of harm and consequences to Ms. Doe.

177.     As the sole athletic trainer for Butler women's soccer team, Howell possessed unique authority and power over female athletes and access to their bodies in vulnerable circumstances and environments.

178.     It was obvious that Howell – left unsupervised and unmonitored, and with no protocols, education, or training provided to student-athletes or athletic staff regarding employee-on-student-athlete sexual assault or trainer boundaries, protocols, and practices – posed an unjustifiably high risk of harming the female student-athletes entrusted to his care.

179.    This risk was known to Defendants and/or so obvious that it should have been known to Defendants, particularly in light of the 2012 NCAA *Staying In Bounds* Publication and treatment providers' widely publicized sexual abuse and assault of students and athletes, including but not limited to that of Larry Nassar, Robert Anderson, Richard Strauss, and James Heaps.

180.    Defendant Butler is vicariously liable for its employees' gross negligence, under the doctrine of respondeat superior.

181.    At all relevant times, Defendant Reiff's grossly negligent acts and omissions, as well as those of the coaches, arose and were within the scope of their employment as athletic staff hired by Defendant Butler and as agents of Butler and were in furtherance of Butler's business and interests in the success of the women's soccer team; operating, managing and supervising the team; and training and caring for Ms. Doe and other student-athletes so that the team would compete for and on behalf of Butler and its athletic program.

182.    As a direct and proximate result of Defendants' grossly negligent actions and inaction, Ms. Doe was sexually assaulted, sexually harassed, groomed, photographed, and abused for years, and suffered and continues to suffer severe physical and emotional injuries, distress, and other injuries and damages for which she is entitled to be compensated.

**COUNT III**
**Battery**
**(Defendants Butler and Howell)**

183.    Plaintiff Jane Doe 2 incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

184.    Defendant Howell intended to cause harmful and/or offensive contact with Ms. Doe, and an imminent apprehension of such contact, when he repeatedly and illicitly touched her inner groin and other sensitive areas of her body, and he directly harmed Ms. Doe as a result.

185.    Defendant Howell acted recklessly and/or with reckless disregard for the consequences when he repeatedly and illicitly touched Ms. Doe's inner groin and other sensitive areas.

186.    Defendant Howell's sexual motivation and misconduct are considered aggravating conduct for the tort of battery against Ms. Doe.

187.    Ms. Doe did not consent to Defendant Howell touching her inner groin, pubic hair, or other sensitive areas.

188.    Defendant Howell's illicit touching of Ms. Doe's inner groin and pubic hair would offend a person with a reasonable sense of personal dignity.

189.    Nonconsensual contact of a sexual nature is inherently offensive.

190.    Defendant Butler is vicariously liable for Defendant Howell's battery on Ms. Doe under the doctrine of respondeat superior.

191.    At all relevant times, Howell was employed by Butler as an athletic trainer, primarily and purportedly working with the women's soccer team to remedy and prevent injuries through physical treatments.

192.    Defendant Howell, as an employee and agent of Butler, battered Ms. Doe in the course of providing her physical treatment.

193.    Defendant Howell battered Ms. Doe while he was performing some authorized acts that were within the scope of his employment, related to services he provided as an athletic trainer, and motivated to an extent by Butler's business and interest in the success of the

women's soccer team and training and caring for Ms. Doe and other female athletes so that the team competed for and on behalf of Butler and its athletic program.

194.    As a direct and proximate result of Defendants' battery, Ms. Doe suffered and continues to suffer severe physical and emotional injuries, distress, and other injuries and damages for which she is entitled to be compensated.

**COUNT IV**
**Assault**
**(Defendants Butler and Howell)**

195.    Plaintiff Jane Doe 2 incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

196.    Defendant Howell acted with the intent to cause harmful and/or offensive contact with Ms. Doe when he treated and massaged her, including by touching her inner groin and pubic hair, and caused Ms. Doe to reasonably fear that he would continue touching intimate areas of her body.

197.    Butler is vicariously liable for Defendant Howell's assaults on Ms. Doe under the doctrine of respondeat superior.

198.    At all relevant times, Howell was employed by Butler as an athletic trainer, primarily and purportedly working with the women's soccer team to remedy and prevent injuries through physical treatments.

199.    Defendant Howell, as an employee and agent of Butler, assaulted Ms. Doe in the course of providing her physical treatment.

200.    Defendant Howell assaulted Ms. Doe while he was performing some authorized acts that were within the scope of his employment, related to services he provided as an athletic trainer, and motivated to an extent by Butler's business and interest in the success of the

women's soccer team and training and caring for Ms. Doe and other female athletes so that the team would compete for and on behalf of Butler and its athletic program.

201.    As a direct and proximate result of Defendants' assaults, Ms. Doe suffered and continues to suffer severe physical and emotional injuries, distress, and other injuries and damages for which she is entitled to be compensated.

## COUNT V
### Intentional Infliction of Emotional Distress
### (Defendants Butler and Howell)

202.    Plaintiff Jane Doe 2 incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

203.    Defendant Howell's abuse of his position of authority and power as a Butler athletic trainer, and grooming, manipulating, controlling, photographing, and sexually abusing Ms. Doe, a vulnerable student-athlete, was atrocious, constitutes extreme and outrageous conduct that exceeds all bounds usually tolerated by a decent society, and is utterly intolerable in a civilized community based upon prevailing cultural norms and values.

204.    Defendant Howell's abuse of his position of authority and power as a Butler athletic trainer and grooming, manipulating, controlling, photographing, and sexually abusing Ms. Doe intentionally or recklessly caused her to suffer severe emotional distress.

205.    Butler is vicariously liable for Defendant Howell's intentional infliction of emotional distress under the doctrine of respondeat superior.

206.    Defendant Howell, as an employee and agent of Butler, abused his position of authority and power over Ms. Doe and groomed, manipulated, controlled, photographed, and sexually abused her in the course of providing her physical treatment and other services as a

Butler athletic trainer assigned to treat her and the women's soccer team so that the team competed for and on behalf of Butler and its athletic program.

207.    Defendant Howell abused his position of authority and power over Ms. Doe and groomed, manipulated, controlled, photographed, and sexually abused her while he was performing some authorized acts that were within the scope of his employment, related to services he provided as an athletic trainer, and motivated to an extent by Butler's business and interest in the success of the women's soccer team and training and caring for Ms. Doe and other female athletes on the team.

208.    As a direct and proximate result of Defendants' intentional infliction of emotional distress, Ms. Doe suffered and continues to suffer severe physical and emotional injuries, distress, and other injuries and damages for which she is entitled to be compensated.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jane Doe 2 requests entry of JUDGMENT in her favor and against Defendants: compensating her for her injuries and damages including, but not limited to, compensatory damages, past, present, and future physical and psychological pain, suffering and impairment, medical bills, counseling, and other costs and expenses for past and future medical and psychological care and lost earnings; awarding punitive damages allowable under law; and for such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury.

*[Signatures on Next Page]*

30

Respectfully Submitted,

Date: July 26, 2023

THE FIERBERG NATIONAL LAW GROUP, PLLC

/s/ Monica H. Beck
Monica H. Beck*
Rachel Denhollander*
Douglas E. Fierberg*
201 East 17th Street, Suite A
Traverse City, MI 49684
T: (231) 933-0180
F: (231) 252-8100
mbeck@tfnlgroup.com
rdenhollander@tfnlgroup.com
dfierberg@tfnlgroup.com
*pro hac vice motions to be filed

COHEN & MALAD, LLP

/s/ Andrea R. Simmons
Andrea R. Simmons
Greg L. Laker
One Indiana Square, Suite 1400
Indianapolis, IN 46204
T: (317) 636-6481
F: (317) 636-2593
asimmons@cohenandmalad.com
glaker@cohenandmalad.com

*Attorneys for Plaintiff*